FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 26, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRISTOPHER B.,[1] | No. 2:23-cv-00098-MKD |
| Plaintiff, | ORDER AFFIRMING THE COMMISSIONER'S DECISION |
| v. | **ECF Nos. 8, 10** |
| MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY, [2] | |
| Defendant. | |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted for Kililo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' briefs.[3]  ECF Nos. 8, 10.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court affirms the Commissioner's decision.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

---

[3] Plaintiff's opening brief is labeled a Motion for Summary Judgment.  ECF No. 8. However, the supplemental rules for Social Security actions under 42 U.S.C. § 405(g) went into effect on December 1, 2022; Rule 5 and Rule 6 state the actions are presented as briefs rather than motions.  Fed. R. Civ. P. Supp. Soc. Sec. R. 5, 6.

ORDER - 2

citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§ 404.1502(a), 416.902(a).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

ORDER - 3

has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c),

ORDER - 4

416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

ORDER - 5

If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

ORDER - 6

**ALJ'S FINDINGS**

On December 20, 2017, Plaintiff applied both for Title II disability insurance benefits and Title XVI supplemental security income benefits alleging an amended disability onset date of June 27, 2017.  Tr. 18, 97-98, 231-38.  The applications were denied initially and on reconsideration.  Tr. 133-36, 139-44.  Plaintiff appeared before an administrative law judge (ALJ) on December 11, 2019.  Tr. 38-64.  On December 26, 2019, the ALJ denied Plaintiff's claim.  Tr. 15-27.  Plaintiff appealed the denial, resulting in a remand from this Court.  Tr. 856-58.  Plaintiff appeared for a remand hearing on January 12, 2023.  Tr. 788-815.  On February 15, 2023, the ALJ again denied Plaintiff's claim.  Tr. 757-86.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through September 30, 2022, engaged in substantial gainful activity for the last two quarters of 2017 and the first quarter of 2018.  Tr. 763.  As there was a continuous 12-month period since June 27, 2017 during which Plaintiff did not engage in substantial gainful activity, the ALJ continued the sequential evaluation.  Tr. 764.  At step two, the ALJ found that Plaintiff has the following severe impairments: fibromyalgia, degenerative disc disease, degenerative joint disease, obesity (BMI 42), migraines, major depressive disorder, anxiety, and posttraumatic stress disorder.  Tr. 764.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 765. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [P]ostural activities can only be performed occasionally with no use of ladders, ropes, or scaffolds. [Plaintiff] should engage in no forceful grasping bilaterally. He should avoid concentrated exposure to vibration and avoid all hazards such as unprotected heights and dangerous moving machinery. He can understand, remember, and carry out simple, routine tasks and maintain concentration, persistence, and pace for two-hour intervals between regularly scheduled breaks. He should have no contact with the public.

Tr. 768.

At step four, the ALJ found Plaintiff is unable to perform any of his past relevant work. Tr. 776. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as garment sorter; food sorter, agriculture; and cleaner, housekeeping. Tr. 778. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of June 27, 2017, through the date of the decision. *Id.*

Per 20 C.F.R. §§ 404.984, 416.1484 the ALJ's decision following this Court's prior remand became the Commissioner's final decision for purposes of judicial review.

ORDER - 8

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ conducted a proper step-one analysis;

2. Whether the ALJ properly evaluated the medical opinion evidence;

3. Whether the ALJ conducted a proper step-three analysis;

4. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

5. Whether the ALJ conducted a proper step-five analysis.

ECF No. 8 at 5.

**DISCUSSION**

**A. Step One**

Plaintiff contends the ALJ erred by finding Plaintiff engaged in substantial gainful activity after the alleged onset date. ECF No. 8 at 7-8. Plaintiff contends his work should have been found to be unsuccessful work attempts (UWA). *Id.*

At step one of the sequential evaluation process, the ALJ considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the ALJ must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial

1  gainful activity is work activity that "involves doing significant physical or mental

2  activities" on a full-or part-time basis, and "is the kind of work usually done for

3  pay or profit." 20 C.F.R. §§ 404.1572, 416.972. In some instances, short-term

4  work may be considered an unsuccessful work attempt instead of substantial

5  gainful activity. *See Gatliff v. Comm'r Soc. Sec. Admin.*, 172 F.3d 690, 694 (9th

6  Cir. 1999). The concept was designed as an equitable means of disregarding work

7  that does not demonstrate sustained substantial gainful employment. *Id.*; *see also*

8  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Several courts, including

9  this one, have recognized that disability claimants should not be penalized for

10  attempting to lead normal lives in the face of their limitations.").

11      A UWA is defined by regulation as "work that [the claimant is] forced to

12  stop or reduce below the substantial gainful activity level after a short time because

13  of [their] impairment." 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1). A UWA must

14  last six months or less, and there must be a significant break in the continuity of

15  work before the claimant began another attempt that can be deemed a UWA. 20

16  C.F.R. §§ 404.1574(c), 416.974(c). The Field Office recommended Plaintiff's

17  work be considered UWAs because the periods lasted less than six months and

18  ended due to Plaintiff's conditions. Tr. 295. However, to be a UWA, the claimant

19  must have discontinued for a significant period, which is defined as at least 30

20  consecutive days. 20 C.F.R. §§ 404.1574(c)(2), 416.974(c)(2). Plaintiff worked at

ABHS from August 18 to October 30, 2017; Alorica Business Solutions from November 27 to December 16, 2017; Labor finders from December 17 to December 18, 2017; R&B Systems Inc. from January 3 to March 15, 2018; and U.S. Tech from April 23 to April 26, 2018. Tr. 288, 329. There were not 30-day periods of unemployment between any of the jobs. Thus, the work does not appear to qualify as a UWA. Plaintiff bears the burden in establishing prior work qualifies as a UWA at step one, and Plaintiff has not met that burden here. *See Tackett*, 180 F.3d at 1098l; *Argueta v. Colvin*, No. 1:15-CV-01110-SKO, 2016 WL 4138577, at *8 (E.D. Cal. Aug. 3, 2016), *aff'd sub nom. Argueta v. Berryhill*, 703 F. App'x 460 (9th Cir. 2017).

Plaintiff contends the ALJ erred in ignoring the Field Office's recommendation that the work be found a UWA. ECF No. 8 at 7-8. However, the work could not be a UWA, as discussed *supra*, and the ALJ addressed the recommendation. Tr. 763. The ALJ was not required to articulate reasons to reject the recommendation. *Id.*, 20 C.F.R. §§ 404.1520b(c), 416.920b(c). Plaintiff also contends the ALJ erred in considering Plaintiff's receipt of unemployment benefits at step one. ECF No. 8 at 8. However, as discussed further *infra*, the ALJ reasonably considered Plaintiff's receipt of unemployment benefits when Plaintiff cites to no evidence he held himself out as only available for part-time work. The ALJ did not err at step one. Plaintiff is not entitled to remand on these grounds.

ORDER - 11

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in her consideration of the medical opinions of Joseph Campbell, PAC; Dane Vulcan; and Thomas Genthe, Ph.D.  ECF No. 8 at 9-16.

As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s) . . . ."  *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding"

ORDER - 12

(including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements").  20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs

ORDER - 13

(c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3),

416.920c(b)(3).

The Ninth Circuit addressed the issue of whether the changes to the

regulations displace the longstanding case law requiring an ALJ to provide specific

and legitimate reasons to reject an examining provider's opinion.  *Woods v.*

*Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  The Court held that the new

regulations eliminate any hierarchy of medical opinions, and the specific and

legitimate standard no longer applies.  *Id*.  The Court reasoned the "relationship

factors" remain relevant under the new regulations, and thus the ALJ can still

consider the length and purpose of the treatment relationship, the frequency of

examinations, the kinds and extent of examinations that the medical source has

performed or ordered from specialists, and whether the medical source has

examined the claimant or merely reviewed the claimant's records.  *Id.* at 792.

However, the ALJ is not required to make specific findings regarding the

relationship factors.  *Id.*  Even under the new regulations, an ALJ must provide an

explanation supported by substantial evidence when rejecting an examining or

treating doctor's opinion as unsupported or inconsistent.  *Id.*

1.  *Mr. Campbell*

On May 7, 2018, Mr. Campbell, a treating provider, conducted an

examination and rendered an opinion on Plaintiff's functioning.  Tr. 648-52, 662-

ORDER - 14

68.  On the opinion form, Mr. Campbell stated Plaintiff had been diagnosed with polyarthralgia; positive CCP antibodies; elevated uric acid, right knee; and osteoarthritis.  Tr. 649.  On the accompanying examination, Mr. Campbell assessed Plaintiff with elevated uric acid, rheumatoid arthritis, CCP positive, polyarthralgia, right knee pain, and right knee osteoarthritis.  Tr. 663.  Mr. Campbell opined Plaintiff's polyarthralgia causes moderate limitations in his ability to sit, stand, walk, lift, carry, handle, push, pull, reach, stoop, and crouch; Plaintiff is severely limited, defined as unable to meet the demands of even sedentary work; and he opined the limitations would last 12 months with treatment.  Tr. 649-50.  The ALJ found Mr. Campbell's opinion was not persuasive.  Tr. 773.

First, the ALJ found Mr. Campbell's opinion was not supported by his examination and explanation.  *Id.*  Supportability is one of the most important factors an ALJ must consider when determining how persuasive a medical opinion is.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The more relevant objective evidence and supporting explanations that support a medical opinion, the more persuasive the medical opinion is.  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  Mr. Campbell's examination of Plaintiff documented normal gait and full range of motion, with no abnormalities that support severe limitations.  Tr. 773 (citing Tr. 651-52, 661-68).  Mr. Campbell opined Plaintiff's polyarthralgia caused only moderate limitations, and he did not assign a rating to Plaintiff's other symptoms;

the ALJ found the moderate rating was inconsistent with the opinion that Plaintiff

has severe limitations.  Tr. 773 (citing Tr. 649-50).  Mr. Campbell also stated his

opinion was based on Plaintiff's right knee x-ray and labs, but the reports were not

attached as the questionnaire instructs.  Tr. 773 (citing Tr. 649).  The right knee x-

ray and labs appear in the record; however, the x-ray documents only "minimal

patellofemoral osteoarthrosis."  Tr. 668.  The labs confirm elevated uric acid and

positive CCP.  Tr. 666-67.

Plaintiff contends Mr. Campbell supported his opinion by listing "clinical

findings," however the list is a list of diagnoses.  ECF No. 8 at 10 (citing Tr. 649).

Plaintiff contends the opinion is consistent with the record, which documents

progressive fibromyalgia pain.  ECF No. 8 at 10.  Mr. Campbell's opinion is not

consistent with progressive fibromyalgia pain, as Mr. Campbell did not list

fibromyalgia as a diagnosis in his opinion.  Tr. 649.  Mr. Campbell listed

fibromyalgia in the past medical history, Tr. 662, but did not state fibromyalgia

causes any of Plaintiff's limitations.  Plaintiff appears to conflate polyarthralgia

and fibromyalgia; however, the two terms have different meanings and are not

interchangeable.  *See Pacheco v. Colvin*, No. 12-CV-01279-MSK, 2013 WL

5462297, at *1 (D. Colo. Sept. 30, 2013) ("Literally, polyarthralgia means pain in

several joints."); *see also* SSR 12-2p "Evaluation of Fibromyalgia."  Plaintiff

contends the moderate rating for polyarthralgia (which Plaintiff labels a moderate

ORDER - 16

1  rating of fibromyalgia), is consistent with Mr. Campbell's finding of a severe

2  rating. ECF No. 8 at 10. However, the ALJ reasonably found impairments

3  causing only moderate limitations could not cause an overall severe rating.

4      Second, the ALJ found Mr. Campbell's opinion was inconsistent with the

5  overall record. Tr. 773. Consistency is one of the most important factors an ALJ

6  must consider when determining how persuasive a medical opinion is. 20 C.F.R.

7  §§ 404.1520c(b)(2), 416.920c(b)(2). The more consistent an opinion is with the

8  evidence from other sources, the more persuasive the opinion is. 20 C.F.R. §§

9  404.1520c(c)(2), 416.920c(c)(2). The ALJ found Mr. Campbell's opinion was

10 inconsistent with Plaintiff's routine and conservative care and his wide array of

11 daily activities. Tr. 773. As discussed further *infra*, Plaintiff engaged in work

12 after the alleged onset date, was independent in his self-care and caring for

13 children, and was able to engage in social activities with others.

14     Plaintiff contends the overall record is consistent with Mr. Campbell's

15 opinion because he had waxing and waning of his symptoms, there is limited

16 treatment available for fibromyalgia, and the records from 2020 on document

17 limitations including decreased grip strength, impaired ambulation, pain, crepitus,

18 and impaired range of motion. ECF No. 8 at 11. Although Plaintiff offers an

19 alternative interpretation of the evidence, where the ALJ's interpretation of the

20 record is reasonable as it is here, it should not be second-guessed. *Rollins v.*

*Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  While Plaintiff cites to records

documenting abnormal gait, range of motion, and strength from 2020 to 2022,

there are multiple appointments where Plaintiff had generally normal gait, strength,

and range of motion.  *See, e.g.,* Tr. 1099, 1103, 1156, 1232.  Although Plaintiff

demonstrated decreased grip strength, Tr. 1099, he is able to drive for one to two

hours at a time, Tr. 770.  The ALJ's finding that Mr. Campbell's opinion is

inconsistent with the overall record is supported by substantial evidence.

### 2. Mr. Vulcan

On October 22, 2019, Mr. Vulcan, an examining occupational therapist,

conducted an examination and rendered an opinion on Plaintiff's functioning.  Tr.

748-54.  Mr. Vulcan opined Plaintiff can seldomly lift 40 pounds from waist to

shoulder, occasionally lift 30 pounds, and frequently lift 20 pounds; seldomly carry

40 pounds and occasionally carry 30 pounds; push 56 pounds seldomly and pull 83

pounds seldomly; frequently reach forward and from waist to shoulder,

occasionally reach above shoulder; seldomly bend/stoop, squat, walk, and climb

stairs; occasionally crouch, kneel, manipulate, and grasp; never climb ladders; and

constantly sit.  Tr. 749.  He opined Plaintiff's work pace is in the "marginal" level;

he has mild balance deficits, and he is unable to maintain single leg stance on

either foot; Plaintiff has decreased capacity for work related tasks due to joint pain

related to fibromyalgia; it is unlikely he can tolerate an eight-hour workday; and he

presents with moderately limited work day tolerance (four to six hours per day).

Tr. 749-51.  The ALJ found Mr. Vulcan's opinion was not persuasive.  Tr. 773.

First, the ALJ found Mr. Vulcan's opinion was not supported by his

examination.  *Id.*  Supportability is one of the most important factors an ALJ must

consider when determining how persuasive a medical opinion is.  20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2).  The more relevant objective evidence and

supporting explanations that support a medical opinion, the more persuasive the

medical opinion is.  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  While Mr.

Vulcan opined Plaintiff cannot perform any work, the ALJ found the examination

documented Plaintiff could lift enough to meet the demands of more than light

work.  Tr. 773.  Mr. Vulcan's examination documented Plaintiff was able to lift a

maximum of 40 pounds, push 56 pounds, and pull 83 pounds, and he can

constantly sit, and frequently stand.  Tr. 749.  While Plaintiff contends Mr.

Vulcan's opinion that Plaintiff could sustain only four to six hour workdays is

supported, ECF No. 8 at 13, Mr. Vulcan did not explain why Plaintiff could work

only six hours or less when he is able to sit constantly, stand frequently, and lift up

to 40 pounds.  The ALJ reasonably found Mr. Vulcan's opinion was not supported

by the examination.

Second, the ALJ found Mr. Vulcan's opinion was inconsistent with the

overall record.  Tr. 773.  Consistency is one of the most important factors an ALJ

must consider when determining how persuasive a medical opinion is. 20 C.F.R.

§§ 404.1520c(b)(2), 416.920c(b)(2). The more consistent an opinion is with the

evidence from other sources, the more persuasive the opinion is. 20 C.F.R. §§

404.1520c(c)(2), 416.920c(c)(2). The ALJ found Mr. Vulcan's opinion was

inconsistent with objective evidence documenting only mild inflammation of the

hands, an ability to make fists bilaterally, normal ambulation, and normal range of

motion at multiple appointments over the years. Tr. 773. The ALJ also noted Mr.

Vulcan's opinion was inconsistent with Plaintiff's ability to work as an Uber driver

for several months during the relevant period. *Id.* While Plaintiff again offers an

alternative interpretation of the evidence, the ALJ reasonably found Mr. Vulcan's

opinion was inconsistent with the record.

Third, the ALJ found Mr. Vulcan's opinion appeared to rely too heavily on

Plaintiff's self-report. Tr. 773. As supportability is one of the most important

factors an ALJ must consider when determining how persuasive a medical opinion

is, 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2), a medical provider's reliance on

a Plaintiff's unsupported self-report is a relevant consideration when determining

the persuasiveness of the opinion. The ALJ noted that Mr. Vulcan's opinion

appears to have given excessive credit to Plaintiff's subjective pain complaints,

which are not consistent with the objective reason as discussed herein. As the ALJ

gave supported reasons to reject Plaintiff's symptom claims, the ALJ reasonably rejected Mr. Vulcan's opinion as overly reliant on Plaintiff's self-report.

Lastly, the ALJ found Mr. Vulcan's opinion addressed an issue reserved to the Commissioner. Tr. 773. The ALJ is not required to provide any analysis of how they considered an opinion that addresses an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3). As such, the ALJ reasonably rejected Mr. Vulcan's opinion that Plaintiff is unable to work an eight-hour day.

### 3. Dr. Genthe

On May 9, 2018, Dr. Genthe, an examining psychologist, conducted an examination and rendered an opinion on Plaintiff's functioning. Tr. 654-61. Dr. Genthe diagnosed Plaintiff with major depressive disorder, with anxious distress; panic disorder; other specified anxiety disorder, with post-trauma like features; alcohol use disorder, sustained remission; and opioid use disorder (narcotic prescriptions), in sustained remission. Tr. 656. Dr. Genthe opined Plaintiff has no to mild limitations in understanding, remembering, and persisting in tasks by following very short and simple instructions, learning new tasks, performing routine tasks without special supervision, making simple work-related decisions, being aware of normal hazards and taking appropriate precautions, asking simple questions or requesting assistance, communicating and performing effectively in a

work setting, and setting realistic goals and planning independently; moderate

limitations in his ability to understand, remember, and persist in tasks by following

detailed instructions, perform activities within a schedule, maintain regular

attendance, and be punctual within customary tolerances without special

supervision, and adapt to changes in a routine work setting; and marked limitations

in his ability to maintain appropriate behavior in a work setting and complete a

normal workday/workweek without interruptions from psychologically-based

symptoms.  Tr. 657.  Dr. Genthe further opined Plaintiff's impairments overall

have a marked severity rating, the limitations are expected to last nine to 12

months with treatment, vocational training/services would minimize or eliminate

barriers to employment, his prognosis is fair, his psychological symptoms appear

to have considerably impacted his daily activities and level of functioning

necessary to pursue employment or education, and treatment is needed to help him

regain the necessary emotional functioning to resume full-time work.  Tr. 657.

The ALJ found Dr. Genthe's opinion was not persuasive.  Tr. 775.

First, the ALJ found Dr. Genthe's opinion was not supported by his

examination.  *Id.*  Supportability is one of the most important factors an ALJ must

consider when determining how persuasive a medical opinion is.  20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2).  The more relevant objective evidence and

supporting explanations that support a medical opinion, the more persuasive the

medical opinion is.  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  While Dr.

Genthe opined Plaintiff overall has marked limitations, he also opined most of the

individual limitations were only mild to moderate.  Tr. 657.  On examination,

Plaintiff had normal appearance, speech, attitude, and behavior.  Tr. 658.

Although Dr. Genthe did not check boxes indicating whether each category was

normal or not, the answers in response to each category indicate Plaintiff's

thoughts, orientation, perception, memory, abstract thought, judgment, insight, and

concentration.  Tr. 658-59.  Plaintiff knew the president and number of weeks in

the year but not the vice president.  Tr. 659.  Plaintiff contends Dr. Genthe's

opinion was supported by his examination because he documented Plaintiff's self-

reported symptoms and limitations, and Plaintiff had a depressed affect and shaky

mood.  ECF No. 8 at 15 (citing Tr. 654-61).  However, the ALJ reasonably found

Dr. Genthe's opinion was not supported by the generally normal mental status

examination.

Second, the ALJ found Dr. Genthe's opinion was not consistent with the

overall record.  Tr. 775.  Consistency is one of the most important factors an ALJ

must consider when determining how persuasive a medical opinion is.  20 C.F.R.

§§ 404.1520c(b)(2), 416.920c(b)(2).  The more consistent an opinion is with the

evidence from other sources, the more persuasive the opinion is.  20 C.F.R. §§

404.1520c(c)(2), 416.920c(c)(2).  The ALJ found Dr. Genthe's opinion was not

consistent with medical records documenting intact mental status examinations and

significant improvement following conservative treatment.  Tr. 776.  Plaintiff

contends Dr. Genthe's opinion is consistent with the medical record but cites to his

self-reported symptoms.  ECF No. 8 at 16.  Plaintiff does not cite to objective

evidence that document marked limitations due to his mental health symptoms.

Medical records document normal thoughts, speech, attitude, mood, affect,

cognition, appearance, and behavior.  *See, e.g.,* Tr. 1036-37, 1049-50, 1053-54,

1056-57.  The ALJ reasonably rejected Dr. Genthe's opinion as inconsistent with

the overall record.  Plaintiff is not entitled to remand on these grounds.

**C. Step Three**

Plaintiff contends that the ALJ erred by finding that Plaintiff's impairments

did not meet or equal Listing 14.09D and failing to develop the record and follow

the Court's Order.  ECF No. 8 at 16-18.  At step three, the ALJ must determine if a

claimant's impairments meet or equal a listed impairment.  20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii).

The Listing of Impairments "describes for each of the major body systems

impairments [which are considered] severe enough to prevent an individual from

doing any gainful activity, regardless of his or her age, education or work

experience."  20 C.F.R. §§ 404.1525, 416.925.  "Listed impairments are

purposefully set at a high level of severity because 'the listings were designed to

ORDER - 24

operate as a presumption of disability that makes further inquiry unnecessary.'"
*Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).  "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered."  *Kennedy,* 738 F.3d at 1176.  If a claimant meets the listed criteria for disability, she will be found to be disabled.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim."  *Tackett,* 180 F.3d at 1099 (emphasis in original); 20 C.F.R. §§ 404.1525(d), 416.925(d). "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment . . . ."  *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting 20 C.F.R. § 404.1526(a)).  "If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment."  *Id*.  However, "'[m]edical equivalence must be based on medical findings,'" and "'[a] generalized assertion

of functional problems is not enough to establish disability at step three.'" *Tackett*, 180 F.3d at 1100 (quoting 20 C.F.R. § 404.1526(a)).

The claimant bears the burden of establishing her impairment (or combination of impairments) meets or equals the criteria of a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). "An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." Social Security Ruling (SSR) 17-2P, 2017 WL 3928306, at *4 (effective March 27, 2017).

Here, the ALJ found that Plaintiff's impairments and combinations of impairments did not meet or equal any listings, including Listing 14.09. Tr. 765-66. Listing 14.09D requires repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level: 1) Limitation of activities of daily living; 2) Limitation in maintaining social functioning; or 3) Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. 20 C.F.R. § 404, Subpt. P, App. 1, § 14.09D. The ALJ considered Social Security Ruling (SSR) 12-2p, and determined that although fibromyalgia can equal a listing, including Listing 14.09,

ORDER - 26

1   Plaintiff's impairments did not equal a listing.  Tr. 765-66.  The ALJ found

2   Plaintiff had only mild inflammation of the joints and does not have a marked

3   limitation in activities of daily living, social functioning, or completing tasks in a

4   timely manner.  Tr. 766.

5        Plaintiff contends the ALJ erred in stating the medical expert testified

6   Plaintiff did not meet or equal a listing when the expert was not called at the

7   hearing.  ECF No. 8 at 17 (citing Tr. 38-64, 765).  However, the ALJ accurately

8   stated that Doctors Fitterer and Staley both opined Plaintiff does not meet or equal

9   a listing.  Tr. 765.  Any error in the ALJ's analysis of Dr. Golub's testimony, or

10  lack thereof, is harmless as the ALJ gave other supported reasons to find Plaintiff

11  does not meet or equal a listing.  *See Molina,* 674 F.3d at 1115.

12       Plaintiff also contends the ALJ erred by failing to develop the record,

13  because she did not call a medical expert to render an opinion on whether

14  Plaintiff's impairments equal Listing 14.09.  ECF No. 8 at 17.  Plaintiff contends

15  the Court's Order required the ALJ to call a medical expert.  *Id.*  The Order

16  directed the ALJ to reevaluate Plaintiff's impairments, including Plaintiff's

17  fibromyalgia in accordance with SSR 12-2p, assess whether Plaintiff's

18  fibromyalgia equals Listing 14.09D, and if warranted, obtain evidence from a

19  medical expert.  Tr. 857-58.  The ALJ was thus not required to call a medical

20

ORDER - 27

expert if the ALJ found it was not warranted.  The ALJ followed the Order by considering Plaintiff's fibromyalgia and SSR 12-2p.

Plaintiff contends he meets the listing because he has repeated manifestations of fibromyalgia with severe fatigue, fever, and malaise, and marked limitations in activities of daily living and concentration, persistence, and pace. ECF No. 8 at 18.  As discussed further *infra*, Plaintiff has engaged in an array of activities of daily living, including working, independently caring for himself and others, and engaging in social activities, which do not support a finding he has marked limitations in his activities of daily living.  While Plaintiff alleges he has marked limitations in his ability to complete tasks in a timely manner due to deficiencies in concentration, persistence, or pace, Plaintiff cites to his self-reported limitations regarding "fibro fog," pain, and needing to lie down.  *Id.*

The ALJ found Plaintiff has a moderate limitation in his ability to concentrate, persist, or maintain pace.  Tr. 767.  The ALJ cited to medical records documenting Plaintiff as alert and oriented, with intact concentration and fund of knowledge, and average intelligence.  *Id.*  Plaintiff also reported he does not require reminders to complete tasks or go places, he can go out alone and complete chores and shopping independently, he has no issues handling money, he can pay attention for up to 60 minutes at a time, has no deficit in following instructions, and he finishes what he starts.  Tr. 323-27.  Plaintiff's own reports do not support a

ORDER - 28

finding of marked limitations in concentration, persistence, or pace.  The ALJ

reasonably found Plaintiff's impairments do not meet or equal Listing 14.09D.

Plaintiff is not entitled to remand on these grounds.

**D. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and

convincing in discrediting his symptom claims.  ECF No. 8 at 18-21.  An ALJ

engages in a two-step analysis to determine whether to discount a claimant's

testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL 1119029, at *2.

"First, the ALJ must determine whether there is objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or

other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

"The claimant is not required to show that [the claimant's] impairment could

reasonably be expected to cause the severity of the symptom [the claimant] has

alleged; [the claimant] need only show that it could reasonably have caused some

degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

omitted).  General findings are insufficient; rather, the ALJ must identify what

ORDER - 29

symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

ORDER - 30

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence.  Tr. 769-70.

### 1. Inconsistent Objective Medical Evidence

The ALJ found Plaintiff's symptom claims were inconsistent with the objective medical evidence.  Tr. 769-71.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680.  However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

First, the ALJ found Plaintiff's allegations regarding his physical symptoms were not consistent with the objective evidence.  Tr. 770-71.  Plaintiff alleges he began using a cane in November 2022, but records indicate Plaintiff was ambulating normally at that time, and imaging did not support the severity of Plaintiff's allegations.  Tr. 770 (citing Tr. 1147, 1159-60, 1194).  While Plaintiff

alleges he can only use his hands for 15 minutes at a time, he reported driving as an Uber driver for one to two hours at a time and he had only mild synovitis at times. Tr. 770, 1194. In May 2017, Plaintiff reported improvement in his migraines with medication, and he reported having only a low frequency of migraines. *Id.* (citing Tr. 629, 632). Imaging of Plaintiff's hip and knee documented some abnormalities, but only minimal osteoarthrosis of the right knee. Tr. 771, 668. Plaintiff reported physical therapy improved his symptoms. Tr. 771 (citing Tr. 1193). While examinations document some abnormalities, Plaintiff often had generally normal findings on examination, including normal strength, sensation, reflexes, and gait. Tr. 765, 770-71.

Next, the ALJ found Plaintiff's allegations regarding his mental health symptoms were inconsistent with the objective evidence. Tr. 767. While Plaintiff alleges significant limitations due to his mental health symptoms, medical records document generally normal orientation, memory, understanding, remembering, eye contact, mood, affect, concentration, and fund of knowledge. *Id.* (citing, e.g., Tr. 639, 664, 671, 1210, 1216, 1218, 1224). Plaintiff demonstrated an ability to control his emotions and behavior, handle self-care, and get along with others. Tr. 767, 771 (citing, e.g., Tr. 639, 655-56, 669, 672).

ORDER - 32

The ALJ reasonably found Plaintiff's allegations were inconsistent with the objective evidence. This was a clear and convincing reason, along with the other reasons offered, to discount Plaintiff's symptom reports.

### 2. Unprescribed Use of a Cane

The ALJ found that while Plaintiff reports using a cane, a doctor had not prescribed the use of a cane. Tr. 770-71. An ALJ may discount a claimant's subjective complaints based on the unprescribed use of an assistive device, such as a cane. *See Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). Plaintiff reported using a cane beginning in November 2022, but there is no documentation of a doctor prescribing the cane. Tr. 770-71. Plaintiff was documented in the medical records as able to ambulate normally without an assistive device. Tr. 771 (citing Tr. 1194). Plaintiff does not cite to any objective evidence to support his contention he requires a cane for ambulation. This was a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's symptom claims.

### 3. Work History

The ALJ found Plaintiff's symptom claims were inconsistent with his work history. Tr. 769-71. Working with an impairment supports a conclusion that the impairment is not disabling. *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir.

2009) (seeking work despite impairment supports inference that impairment is not

disabling).  Plaintiff's alleged onset date corresponds to his loss of his job at

Walmart in June 2017.  Tr. 302, 770.  Plaintiff reported he was let go due to his

migraines causing him to miss too many days of work.  Tr. 41-42.  Plaintiff then

began working again in August 2017, and after that job ended in October 2017, he

obtained another position from November 2017 through December 2017, and then

another position from January 2018 through March 2018.  Tr. 302.  The work

amounted to substantial gainful activity for two quarters in 2017 and one quarter in

2018.  Tr. 763.  Plaintiff contends the ALJ erred in considering his work because

the positions were unsuccessful work attempts, and sporadic work is not

inconsistent with disability.  ECF No. 8 at 7-8, 21-22.  However, as discussed

*supra,* the work cannot be classified as UWAs because there were not 30

consecutive days or more between the positions.  Further, Plaintiff reported

spending time job hunting, managed a paper route for two months 2019, and began

working as an Uber drive for up to 25 hours per week.  Tr. 770.

        The ALJ also noted that Plaintiff received unemployment benefits for three

quarters in 2021.  Tr. 763-64.  "[R]eceipt of unemployment benefits can undermine

a claimant's alleged inability to work fulltime."  *Carmickle v. Comm'r of Soc. Sec.*

*Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008) (citing *Copeland v. Bowen*, 861

F.2d 536, 542 (9th Cir. 1988)).  But where the record "does not establish whether

ORDER - 34

[the claimant] held himself out as available for full-time or part-time work," such a "basis for the ALJ's credibility finding is not supported by substantial evidence," as "[o]nly the former is inconsistent with his disability allegations." *Id.* The ALJ found Plaintiff held himself out as able to work, which was inconsistent with his allegation of disability. Tr. 763-64. Plaintiff contends the ALJ erred in this consideration because an individual may hold themselves out as able to work part-time to receive unemployment benefits, which may still be consistent with a finding of disability. ECF No. 8 at 8. Plaintiff does not cite to anywhere in the record where he reported he held himself out as able to work only part-time.

Plaintiff also contends the unemployment rules were not in effect at the time Plaintiff received benefits due to special conditions related to COVID-19; Plaintiff contends that during that time, he was not required to certify he was able to work. *Id.* (citing Tr. 806-07). Plaintiff does not cite to any evidence beyond his self-report to support his contention that individuals were not expected to be able to work to qualify for benefits during the time the special COVID-19 conditions were in place. The Department of Labor's fact sheet for the Pandemic Unemployment Assistance program states that in general, the program covered "people who are able to, and available for, work as understood by your state's unemployment compensation law, except you are unemployed, partially unemployed, or unable/unavailable to work in one of" a list of situations, such as diagnosis with

COVID-19 or inability to get to work due to quarantine.  Pandemic Unemployment

Assistance Fact Sheet, https://oui.doleta.gov/unemploy/pdf/PUA_FactSheet.pdf

(last accessed December 29, 2023).  The ALJ reasonably rejected Plaintiff's

symptom claims due to his ongoing work and receipt of unemployment benefits

after the alleged onset date.  This was a clear and convincing reason, supported by

substantial evidence, to reject Plaintiff's symptom claims.

### 4. *Activities of Daily Living*

The ALJ found Plaintiff's symptom claims were inconsistent with Plaintiff's

activities of daily living.  Tr. 771.  The ALJ may consider a claimant's activities

that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can

spend a substantial part of the day engaged in pursuits involving the performance

of exertional or non-exertional functions, the ALJ may find these activities

inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*,

674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to

be eligible for benefits, the ALJ may discount a claimant's symptom claims when

the claimant reports participation in everyday activities indicating capacities that

are transferable to a work setting" or when activities "contradict claims of a totally

debilitating impairment." *Molina*, 674 F.3d at 1112-13.  Additionally, the ability

to care for others without help has been considered an activity that may undermine

claims of totally disabling pain.  *Rollins,* 261 F.3d at 857.  However, if the care

ORDER - 36

activities are to serve as a basis for the ALJ to discredit the Plaintiff's symptom claims, the record must identify the nature, scope, and duration of the care involved and this care must be "hands on" rather than a "one-off" care activity. *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017).

As discussed *supra*, the ALJ found Plaintiff's work activity was inconsistent with his allegations. Tr. 771. The ALJ also found Plaintiff was independent in his self-care, including preparing his own meals and handling household chores, and he was able to drive and attend social outings. *Id.* The ALJ noted Plaintiff was able to care for relatively young children without assistance for as long as a week at a time, and one whole summer. *Id.* The ALJ stated the activity "can be quite demanding both physically and emotionally," but did not specify what Plaintiff's tasks were in caring for the children. The records the ALJ cited to indicate Plaintiff cared for the children alone, who were seven and ten-years-old in 2019. Tr. 643, 672, 695, 698, 704, 711, 723, 729. Plaintiff reported he cared for his children and "all their needs (meals, etc.)." The ALJ reasonably found Plaintiff's activities were inconsistent with his allegations of disabling limitations. This was a clear and convincing reason to reject Plaintiff's symptom claims. Plaintiff is not entitled to remand on these grounds.

**E. Step Five**

Plaintiff contends the ALJ erred by relying on vocational expert testimony given in response to an incomplete hypothetical. ECF No. 8 at 21. However, Plaintiff's argument is based entirely on the assumption that the ALJ erred in considering the medical opinion evidence and Plaintiff's symptom claims. *Id.* For reasons discussed throughout this decision, the ALJ's consideration of Plaintiff's symptom claims, and the medical opinion evidence are legally sufficient and supported by substantial evidence. Thus, the ALJ did not err in finding Plaintiff capable of performing other work in the national economy based on the hypothetical containing Plaintiff's RFC. Plaintiff is not entitled to remand on these grounds.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Martin O'Malley as Defendant and update the docket sheet.

2. Plaintiff's Brief, **ECF No. 8**, is **DENIED**.

3. Defendant's Brief, **ECF No. 10**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

ORDER - 38

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED January 26, 2024.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 39